## 35378. ALLIED EGG & POULTRY COMPANY *v.* JOCIE MOTOR LINES, INC., *et al.*
## 35379. STRONG *v.* JOCIE MOTOR LINES, INC., *et al.*

DECIDED MARCH 23, 1955—REHEARING DENIED APRIL 1, 1955.

*John H. Hudson, William R. Hudson,* for C. P. Strong.

*Dunaway & Embry, J. M. Embry,* for Allied Egg & Poultry Co., Inc.

*Hamilton Lokey, George A. Durden, Lokey, Bowden & Rolleston,* for Jocie Motor Lines, Inc.

QUILLIAN, J. The most vital question and the most difficult of solution is whether the verdict was supported by the evidence. The issue centers around two phases of evidence: (1) Did the evidence show facts that would constitute the defendant Allied Egg & Poultry Company respondeat superior of the driver Strong? (2) Did the evidence authorize a finding that the proximate cause of the wreck was the negligence of the defendant rather than a pure accident for which no one was responsible? We think that the testimony of the defendant's witnesses Strong and Sexton, while somewhat confused, was sufficient to authorize the jury to infer that the truck operated by Strong was owned by the defendant Allied Egg & Poultry Company, and that Strong was an employee of Allied Egg & Poultry Company, acting

within the scope of his employment and in the prosecution of the company's business on the occasion of the collision. In this connection read *Hix-Green Co.* v. *Dowis,* 79 *Ga. App.* 412 (53 S. E. 2d 601); *Barnum & Bailey Shows* v. *Himmelweit,* 17 *Ga. App.* 85 (86 S. E. 96).

The petition alleged one of the acts of negligence that caused the collision between its truck and that of Allied Egg & Poultry Company was that the defendants failed to have the tractor of the poultry company equipped with a lamp or lamps, clearly visible for a distance of not less than 200 feet from the rear thereof, as required by section 68-316, Georgia Code Annotated, and this constituted negligence per se on the part of the defendants.

The defendants contended that they were not negligent in that respect or in any other manner. In reference to the lights having become extinguished on the poultry company's truck, they maintained that, while the truck was being operated upon the highway on the occasion of the collision, through no fault of theirs a cable connecting the lights with the battery in the truck suddenly burned through, so that no electricity could reach the bulbs in the truck's lamps, and in consequence of this unforeseen event, which could not in the exercise of ordinary care on their part have been discovered, the lights on the truck ceased to function.

The controversy then centered around the question as to whether the defendants, or either of them were negligent in not having properly inspected the cable prior to driving the truck upon the highway.

Mr. Ramey testified for the plaintiff in substance on direct examination: that he found a frayed place in the middle of the battery cable, where the insulation was worn off from rubbing against the metal frame of the truck. He stated, in his opinion as an expert, that it would have taken a month or more for the cable to have become worn and frayed like that, and that the condition pre-existed the accident. He further testified that the contact of the bare metal of the cable with the frame of the truck would create a short, and this would produce intense heat in the cable which could melt the solder holding the cable in the battery terminal. He further testified that the solder was melted in the terminal connection, part of the wire cable was still in the bracket,

and the cable had burned through at about that point, and was hanging down.

On cross-examination this witness testified: that there was no evidence as to the cable having burned at the point where it was frayed and the insulation was worn off near the middle of the cable; that the cable had burned through near the battery terminal; and that each time the bare metal of the cable touched the metal frame it would not create a short. He further testified as an expert that a cable could, from metal fatigue and vibration, crystallize; that when it crystallized and stress was put on it, the cable could crack; that, as each strand of the cable parted, an electric arc could result and eventually the whole cable would be burned through; and that it was possible that, if the cable cracked suddenly on one side and caused an arc, the whole cable might be burned through at one time. He further testified that, if such a part of the cable were covered with insulation, its crystallized condition would not be detected without stripping off the insulation.

It will be observed upon an analytical examination of Mr. Ramy's testimony that he did not testify that there was metal fatigue from vibration or any other cause. He simply replied to a question of counsel that, if such condition existed, it could suddenly, even momentarily, cause the cable to burn in two at its end.

There was nothing contrary in the witness Ramy's testimony. On direct examination he simply stated that the cable could have been caused to melt and break apart by a condition that he found, upon his inspection of it, to exist, namely, the worn place in its center caused by its rubbing against the frame of the truck.

On cross-examination, without retracting or contradicting his testimony given on direct examination, he stated that another condition, which he did not find, and under the circumstances related by him it did not appear could have been discoverable at the time of his inspection, could have the effect of melting the cable instantly and at a point that was up to that time concealed by the insulation or fabric cover of the cable. It was apparent, of course, that, if the latter condition prevailed, a careful inspection of the cable by the defendants before taking the truck out upon the highway would not have disclosed it.

We think, under these circumstances, it was for the jury to say

whether the cable was melted by the condition that the witness did find in it, or by a condition that might have existed and brought about the same result.

We are also of the opinion that it was for the jury's determination as to whether the defect that destroyed the usefulness of the cable could have been discovered by the exercise of ordinary care on the part of the defendants before beginning the trip on which the collision occurred, that the worn place in the center of the cable caused it to melt at its end, whether the condition could have been discovered by a reasonably careful inspection of the cable.

Particularly are we persuaded to this view by this court's decision in the case of *Cruse v. Taylor,* 89 *Ga. App.* 611, 616 (80 S. E. 2d 704) : "We think when it appeared from the proof that defendant's brakes were inadequate to control the movements of the car as required by statute the burden passed to defendant to convince the jury that the violation of the statute, if unintentional, was consistent with due care on his part in having the brakes inspected and repaired and that the defect existed at the time of the accident wholly without his fault."

This law is applicable to the statute requiring that motor vehicles be equipped with the lights as it is to the law requiring motor vehicles to be equipped with serviceable brakes.

We think that the questions referred to were for solution by the jury for the reason that the defendant's witness Pearce, while denying that he observed any worn place in the center of the cable testified in part: "Q. Mr. Pearce, did you recall which particular battery cable had come undone, whether the one to the starter or the one to the frame? A. The one to the starter. Q. Is that the positive or negative side? A. The negative side of the battery on an International truck. Q. And when that current is on, if the battery cable should rub against the frame until it's raw, would that cause a short? A. It would." Pearce's testimony tended to corroborate Ramy's, and was of itself sufficient to make an issue as to whether the cable rubbing against the frame of the truck, becoming worn until the insulation was worn from it, and then continuing to vibrate against the steel frame, could have had the effect of causing a short circuit in the electric current passing through it.

We are of the opinion that none of the special grounds of the motion for a new trial shows error. While the charge complained of in ground 6 is perhaps not free of imperfection, it was not error for any of the reasons assigned by the movant.

*Judgment affirmed.* *Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur.* *Felton, C. J., dissents.*

FELTON, C. J., dissenting. I think the evidence demanded a finding that the cause of the cable's burning in two was a defect at the end of the cable, which was covered with insulation at the time of the collision, and that it was a defect which was not discoverable by the defendants by the exercise of ordinary care. The evidence also demanded the finding that the defect in the center of the cable, where the insulation and a few wires were worn, did not contribute in any way to the burning in two of the cable at a point near its end.

The only evidence as to the cause and effect of the cable's burning or breaking in two was the evidence of W. R. Ramy. Assuming that on direct examination Mr. Ramy testified to facts which may have authorized the jury to infer that the patent defect of the cable's being frayed in the middle caused the cable's burning or breaking in two, on cross-examination Mr. Ramy's testimony completely contradicted such facts and clearly showed that the frayed place on the cable had no connection with the cable's burning or breaking in two, showed that the cable was insulated at the point where it burned or broke in two, and showed that the only way the defect which caused the burning or breaking of the cable could have been discovered was to remove the insulation from the cable at that point. See, in this connection, *Evans* v. *Josephine Mills,* 119 *Ga.* 448 (2) (46 S. E. 674); *Evans & Pennington* v. *Scofield's Sons Co.,* 120 *Ga.* 961 (48 S. E. 358). To make such an inspection would have rendered the cable useless because no insulated electric cable would be of practical use after the insulation had been removed. Under the facts of this case, the defendant Strong was charged only with the exercise of ordinary care, and the duty to exercise ordinary care would not require such an inspection as would have revealed the latent defect which caused the cable to burn or break in two. The cable's burning or breaking in two falls into the legal catagory of "accident." *Stansfield* v. *Gardner,* 56 *Ga. App.* 634, 645

738

(193 S. E. 375); *Richter* v. *Atlantic Co.*, 65 *Ga. App.* 605, 608 (4) (16 S. E. 2d 259). Where the damage sued for resulted from an accident, there can be no recovery from the defendant. *Seaboard & Roanoke R. Co.* v. *Spencer*, 111 *Ga.* 868 (36 S. E. 921); *Glanton* v. *City of Rome*, 13 *Ga. App.* 452 (79 S. E. 225).